UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK DIETRICH,

    Plaintiff,

v.

BELL, INC.,

    Defendant.
_____/

Case No. 1:11-cv-1145

HON. JANET T. NEFF

**OPINION**

Pending before the Court in this removed breach of contract action is Plaintiff's Motion for Summary Judgment pursuant to FED. R. CIV. P. 56 (Dkt 30). Defendant filed a response, requesting summary judgment in its favor (Dkt 38), and Plaintiff filed a reply addressing the arguments in Defendant's response (Dkt 39). Having conducted a Pre-Motion Conference in this matter and having now fully considered the parties' written briefs, stipulated statements of fact and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court concludes that Plaintiff's motion is properly denied and that summary judgment is instead properly granted in Defendant's favor.

**I. BACKGROUND**

Defendant Bell, Inc., which has its headquarters in Sioux Falls, South Dakota, manufactures folding cartons. In December 2009, Defendant offered Plaintiff Mark Dietrich, a Kent County, Michigan resident, the position of Account Executive, a position in which he would travel to

generate new business opportunities for Defendant, keeping Grand Rapids, Michigan as his "home base" (Compl. ¶ 5; Pl. SMF[1] ¶ 7). The Offer Letter specified that Plaintiff would be paid pursuant to Defendant's "commission program," the details of which form the basis of the parties' dispute and are spelled out as the following:

> Your starting compensation will be $85,000 (eighty-five thousand dollars) annualized base wages. In addition, you will receive a commission program as follows:
>
> - **New Business Sales**—you will receive 1.25% commission on new business sales in the first year of the business contract. This rate will be adjusted to 0.75% in the second year. Subsequent years will not be eligible for commission.
>
> - Commissions will be paid on a quarterly basis on shipment dollars minus freight. Fifteen percent (15%) of the quarterly commission dollars will be retained by the company and paid at year end to be trued up for returned product, unpaid invoices and product over 90 days old (unless terms are negotiated separately in the supply agreement with the customers).
>
>   o   We will guarantee a commission of $1,000 per month to be paid quarterly for a maximum of 24 months with the qualifier that the guaranteed commission in the second year of your employment will only be paid if a minimum of $2MM (two million dollars) in new sales is booked in your first year.
>
>   o   The guaranteed commissions will be deducted from actual commissions earned as outlined above should actual commissions exceed the guaranteed commission.

(Compl., Ex. 1). Plaintiff accepted the offer and worked for Defendant until the date his employment was terminated on May 11, 2011 (*id.* ¶ 16). It is undisputed that Defendant stopped paying Plaintiff commissions after terminating his employment.

---

[1] Plaintiff's Statement of Material Facts (Dkt 31-1), Defendant's Response to Plaintiff's Statement of Material Facts (Dkt 38 at 27-40).

2

On August 23, 2011, Plaintiff filed suit against Defendant in Kent Circuit Court, seeking the two-year commissions he claims are due and/or accruing on sales to the customers he developed for Defendant, including sales to five new customers (Total Packaging, Tee Lee Popcorn, PMG/Sav-A-Lot, Suter Company, and Dawn Foods) and sales on an existing account (Bay Valley Foods). Plaintiff alleges Breach of Contract (Count I); Violation of Michigan's Sales Representative Commission Act, MICH. COMP. LAWS § 600.2961 (Count II); and Breach of Implied Contract/Unjust Enrichment (Count III).

Defendant removed the case to this Court on October 28, 2011, citing this Court's diversity jurisdiction, 28 U.S.C. § 1332 (Dkt 1, Notice of Removal ¶ 6). Following discovery, this Court conducted a Pre-Motion Conference in June 2012, permitting the parties to brief Plaintiff's proposed dispositive motion. The parties filed the instant motion papers in September 2012 (Dkts 30-39).

## II. ANALYSIS

**A.  Motion Standard**

A motion for summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Moreover, when one party has made a motion for summary judgment, this Court has the discretion to grant summary judgment in favor of an opposing party inasmuch as the moving party is aware that the issue has been raised. *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995). In moving for summary judgment, the movant has the opportunity to "'come forward with all of its evidence' because, in seeking summary judgment, it was required to present facts necessary to demonstrate that there was 'no genuine dispute as to any material fact and [that the moving party was] entitled to judgment as a matter of law.' FED. R. CIV. P. 56(a)." *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 381-82 (6th Cir. 2011). The moving party is considered to have sufficient notice of "the imminence of summary judgment in some form." *Markva v. Haveman*, 168 F. Supp. 2d 695, 706 (E.D. Mich. 2001) (quoting CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRACTICE & PROCEDURE § 2720, at 346 (1998)), *aff'd*, 317 F.3d 547 (6th Cir. 2003). *See, e.g., Salens v. Tubbs*, 292 F. App'x 438, 441 (6th Cir. 2008) (affirming the district court's discretionary decision to grant summary judgment in favor of the nonmovant).

**B.     Discussion**

Plaintiff seeks judgment in his favor and against Defendant as to his breach of contract and Michigan Sales Representative Commission Act claims (Counts I & II), indicating that resolution of his Breach of Implied Contract/Unjust Enrichment claim (Count III) depends on how the Court resolves Counts I and II (Dkt 39 at 5, n.1). The parties do not dispute that Michigan law applies to the issues presented. *See generally Hardy v. Reynolds & Reynolds Co.*, 311 F. App'x 759, 761 (6th Cir. 2009) (discussing choice of law rules in a diversity case).

    **1.**     ***Count I***

Plaintiff argues that the parties' agreement unambiguously provides that Defendant agreed to pay him commissions for two years and that there is nothing in the agreement to support Defendant's position that its two-year obligation to pay him commissions ceased upon termination of his employment (Dkt 31 at 8, 24-26). According to Plaintiff, Defendant's contrary position "ignores the agreement's plain language" (*id.* at 26). Plaintiff argues that Defendant must be held to the clear terms to which it agreed and is therefore required to pay him commissions for two years: 1.25 percent in the first year of the business contract and 0.75 percent in the second year, regardless of his termination (*id.*). Alternatively, Plaintiff argues that even if the Court concludes that the agreement is silent as to post-termination commissions, then he is still entitled to summary judgment under the "procuring cause" doctrine because the "New Business Sales" language is a customer-procurement agreement and the extrinsic evidence leaves "no question" that he is entitled to two-year commissions on all sales to the customers he developed for Defendant (*id.* at 8). Last, Plaintiff argues that "even if there was any ambiguity after a review of the extrinsic evidence (which there is not), it must be strictly construed against Bell as the drafter" (*id.* at 22).

In response, Defendant argues that Plaintiff has misinterpreted both the agreement and the relevant case law in an effort to seek commissions beyond those promised to him by his former employer (Dkt 38 at 7). According to Defendant, the procuring cause doctrine applies only when a contract is silent on whether an agent is entitled to receive post-termination commissions (*id.* at 18). Further, Defendant emphasizes that the procuring cause doctrine, even if applicable, protects the acquisition of an order, not the acquisition of the customer (*id.* at 19). Defendant also emphasizes that the parties contracted to pay Plaintiff commissions only on new business sales and that their agreement does not even mention "customers" (*id.* at 7).

Plaintiff's arguments do not demonstrate that he must prevail as a matter of law.

An agent may recover a commission for either customer procurement or sales procurement. *Lilley v. BTM Corp.*, 958 F.2d 746, 751 (6th Cir. 1992). "Customer procurement" allows an agent to recover a commission for all sales to a customer that the agent procured regardless of whether the agent was involved in the particular sale. *Id.* In contrast, "sales procurement" allows an agent to recover a commission only on the specific sales that the agent procures. *Id.* Whether an agent is entitled to commissions on a customer procurement or sales procurement basis is determined by the contract between the agent and the principal. *Id.* (citing *Shortt v. Centri-Spray Corp.*, 119 N.W.2d 528 (Mich. 1963), and *Butterfield v. Metal Flow Corp.*, 462 N.W.2d 815 (Mich. Ct. App. 1990)).

Where the contract terms are not ambiguous—that is, if they do not allow reasonable conflicting interpretations, then the court looks to the intent of the parties as expressed by the plain language of the contract's terms. *Hardy*, 311 F. App'x at 764 (citing *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 544 (6th Cir. 2007)). Extrinsic evidence is not considered unless the terms are ambiguous. *Id.* Rather, when reading contractual provisions, courts must "give[] the words their plain and ordinary meanings." *Id.* (quoting *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 543 (Mich. Ct. App. 2007)).

Where the contract is silent, a principle of fair dealing, often referred to as "the procuring cause doctrine," is implied in a commission sales contract. *Jack Peddie & Assocs., Inc. v. Whitmor Mfg. Co., Inc.*, 980 F.2d 729 (6th Cir. 1992). "This doctrine applies when a sales agent's authority or employment is terminated and no explicit agreement had been reached over the payment of commissions in the event of termination." *Hardy*, 311 F. App'x at 765. "Thus, in a case in which the agent did the work required to bring about a sale but is terminated before the transaction is

6

completed, the 'procuring cause' doctrine would allow the agent to be compensated for work performed and prevent the principal from taking advantage of the agent's performance without compensating him or her." *Id. See, e.g., Shortt,* 119 N.W.2d at 530 (holding that a manufacturer's representative was entitled to commissions on sales made after the termination of his contract with the manufacturer where the representative procured the sales, even though the oral contract between the representative and the manufacturer made no provisions for the payment of post-termination commissions).

The parties' agreement in this case is silent about post-termination commissions,[2] and the necessity for applying the procuring cause doctrine—for inferring a principle of fair dealing—is therefore present. However, application of the doctrine on these facts does not achieve the result Plaintiff desires.

The Sixth Circuit Court of Appeals has determined that under Michigan law, as announced in *Reed v. Kurdziel*, 89 N.W.2d 479 (Mich. 1958), "it is the acquisition of orders, not the acquisition of the customer that is protected by the 'procuring cause' doctrine." *William Kehoe Assocs. v. Indiana Tube Corp.*, 891 F.2d 293 (6th Cir. 1989). Both Michigan case law and the Restatement interpret the concept of "procuring cause" quite narrowly. *Fernandez v. Powerquest Boats, Inc.*, 798 F. Supp. 458, 461 (W.D. Mich. 1992) *aff'd*, 12 F.3d 212 (6th Cir. 1993); *Roberts Assocs., Inc v. Blazer Int'l Corp.*, 741 F. Supp. 650, 653 (E.D. Mich., 1990)).

Specifically, "[o]nce an agent or broker demonstrates that he is the procuring cause of a sale, he may receive post-termination commissions where the customer's accounts did not require further

---

[2]Plaintiff concedes that the agreement "does not explicitly discuss termination" (Dkt 39 at 9, n.14).

servicing or negotiation." *Buchanan Co. v. Methode Elecs., Inc.*, No. 221663, 2001 WL 1219407, at *2 (Mich. Ct. App. Oct. 12, 2001). However, "[w]here the agent does not participate in the negotiation of a given contract of sale, the agent is not the 'procuring cause' of post-termination sales, even though he may have originally introduced the parties." *APJ Associates, Inc. v. N. Am. Philips Corp.*, 317 F.3d 610, 616 (6th Cir. 2003) (quoting *Roberts*, 741 F. Supp. at 652-53). Indeed,"[i]t is well established that the successful negotiation of a contract by an agent does not give him a right to commissions on renewal, which he does not secure, in the absence of an express contract to that effect." *Jack Peddie*, 980 F.2d 729, at *7 (quoting *Roberts*, 741 F.Supp. at 653) (quoting *Wood v. Hutchinson Coal Co.*, 176 F.2d 682, 684 (4th Cir. 1949)).

Here, Defendant admits that Plaintiff was the procuring cause—the "sole reason"—for the five new customers doing business with Defendant (Pl. SMF ¶ 17), and Plaintiff does not dispute that he received commissions on the sales obtained from the five customers until his employment was terminated. However, the procuring cause doctrine does not operate to entitle Plaintiff to post-termination commissions on sales obtained after Plaintiff's employment was terminated. Given the "New Business Sales" language of their agreement, Plaintiff must have procured all sales, even all reorders, in order to receive commissions on those sales or reorders that were procured after his termination. *See Jack Peddie*, 980 F.2d 729, at *7; *Roberts*, 741 F. Supp. at 653.

Regarding Bay Valley, Defendant admits that Tom Alton, Defendant's Director of New Business Development and Plaintiff's supervisor, sent an email on April 11, 2011, indicating that Bay Valley and Defendant had reached "an agreement in principle" (Pl. SMF ¶ 41); however, Defendant emphasizes that Bay Valley did not place any orders with Defendant until six months after Plaintiff's employment was terminated (Df. SMF ¶ 41). On these undisputed facts, too, the

8

procuring cause doctrine does not operate to entitle Plaintiff to post-termination commissions. Plaintiff was not the procuring cause of the sale, but the customer.

In sum, application of the procuring cause doctrine on these facts does not achieve the result Plaintiff desires. Moreover, because their agreement is not ambiguous, neither admission of extrinsic evidence nor construing the parties' agreement against Defendant are proper avenues to a different result. Because the parties' arguments demonstrate that Defendant is entitled to judgment as a matter of law, the Court, in its discretion, grants summary judgment in Defendant's favor on Count I.

### 2. *Counts II & III*

Plaintiff's Count I (Breach of Contract) having failed, his claim in Count II (Violation of Michigan's Sales Representative Commission Act) likewise fails because the Act has been held explicitly not to supersede an agreement of the parties regarding payment of post-termination commissions. *APJ Associates*, 317 F.3d at 616 (citing MICH. COMP. LAWS § 600.2961(2) ("The terms of the contract ... shall determine when a commission becomes due.")). Evaluation of Count III (Breach of Implied Contract/Unjust Enrichment) is similarly unnecessary. *See Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993) ("[A] contract will be implied only if there is no express contract covering the same subject matter."). Defendant is therefore also entitled to judgment as a matter of law on Counts II and III.

### III. CONCLUSION

For the foregoing reasons, the Court determines that Plaintiff's Motion for Summary Judgment (Dkt 30) is properly denied and Defendant's request for summary judgment (Dkt 38) is

properly granted. An Order will be entered consistent with this Opinion. Because this Order resolves the last pending claim, a Judgment will also be entered.


DATED: January 25, 2013           /s/ Janet T. Neff
                                  JANET T. NEFF
                                  United States District Judge